**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**



FILED
Scott L. Poff, Clerk
United States District Court

By staylor at 8:51 am, Oct 25, 2017

| | |
|---|---|
| DONIEL PORTER, | |
| Movant, | CIVIL ACTION NO.: 2:16-cv-145 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No. 2:15-cr-8) |
| Respondent. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Doniel Porter ("Porter"), an inmate at the Federal Correctional Institution in Jesup, Georgia, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255.  (Doc. 1.)  The Government filed a Response.  (Doc. 3.)  For the following reasons, I **RECOMMEND** the Court **DISMISS in part and DENY in part** Porter's Motion, and **DIRECT** the Clerk of Court to **CLOSE** this case. I also **RECOMMEND** that the Court **DENY** Porter *in forma pauperis* status on appeal and **DENY** Porter a Certificate of Appealability.

## BACKGROUND

Porter pled guilty to conspiracy to possess with intent to distribute, and to distribute, controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, and 18 U.S.C. § 2. J., United States v. Porter, 2:15-cr-8 (S.D. Ga. Jan. 25, 2016), ECF No. 661.  Porter had an assigned total offense level of 25 and a criminal history category of IV.[1]  (Pre-Sentence Investigation report ("PSI"), ¶¶ 45, 63.)  Based on this offense level and category, Porter's advisory guideline range of imprisonment was 84 to 105 months.  (Id. at ¶ 86.)  The statutory

---

[1]  Porter had a base offense level of 26, but received a three-level reduction for acceptance of responsibility and a two-level increase because he and other members of the conspiracy possessed firearms.  (PSI ¶¶ 37, 43–44.)

maximum term of imprisonment was 20 years.  See 21 U.S.C. §§ 846 and 841(b)(1)(C).  The Honorable Lisa Godbey Wood sentenced Porter to 90 months' imprisonment.  J., United States v. Porter, 2:15-cr-8 (S.D. Ga. Jan. 25, 2016), ECF No. 661.  The Court appointed Ron Harrison to represent Porter during these proceedings.  CJA 20, United States v. Porter, 2:15-cr-8 (S.D. Ga. Apr. 17, 2015), ECF No. 67.  Consistent with the appeal waiver in his plea agreement, Porter did not file a direct appeal.

On August 10, 2016, Porter filed his first, timely 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his Sentence.  Mot., Porter v. United States, 2:16-cv-119 (S.D. Ga. Aug. 10, 2016), ECF No. 1.  The Government responded, and Porter soon thereafter filed a Notice to Voluntarily Dismiss.  Resp., Porter v. United States, 2:16-cv-119 (S.D. Ga. Sept. 8, 2016), ECF No. 3; Notice, Porter v. United States, 2:16-cv-119 (S.D. Ga. Sept. 29, 2016), ECF No. 4.  The Court granted Porter's request and dismissed Porter's Motion without prejudice.  J., Porter v. United States, 2:16-cv-119 (S.D. Ga. Sept. 29, 2016), ECF No. 6.  On November 2, 2016, Porter filed the instant, timely Motion to Vacate, Set Aside, or Correct his Sentence.  (Doc. 1.)

## DISCUSSION

Porter contends that, in light of Amendment 794 to United States Sentencing Guideline ("U.S.S.G.") § 3B1.2, he is entitled to a minor role deduction.  (Doc. 1, p. 4.)  Additionally, Porter appears to make an ineffective assistance of counsel claim.[2]  He alleges that Mr. Harrison failed "to raise the issue of a minor participate [sic] during sentence[ing], and request for a downward departure[.]"  (Id. at p. 9.)  The Government responds that: Porter procedurally defaulted his claim by failing to raise it on direct appeal; the collateral attack waiver contained in

---

[2]  Porter mentions this claim in answer to question 13 on the Motion Under 28 U.S.C. § 2255 form and not under the section asking Porter to enumerate the grounds on which he challenges his conviction. (Doc. 1, p. 9.)  The Government did not specifically address Porter's ineffective assistance of counsel claim in its Response.

his plea agreement bar his claims; his claims are not cognizable in a § 2255 motion; and his claims fail on the merits.  (Doc. 3, p. 3.)

**I.      Whether the Collateral Waiver Provision in Porter's Plea Agreement Bars his Claims other Than Ineffective Assistance of Counsel**

The Government maintains Porter agreed to completely waive his collateral attack rights as part of his plea agreement.  (Id. at p. 4.)  The Government asserts Porter "confirmed that he had read and understood" the waiver by signing his plea agreement.  (Id.)

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  It is well-settled that a waiver of appeal[3] provision contained in a plea agreement is enforceable if the waiver is knowing and voluntary.  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)).  "'To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver.'"  United States v. Mottola, 394 F. App'x 567, 568 (11th Cir. 2010) (quoting United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)).  "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error."  United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999).  "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous."  Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

---

[3]  "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence.  United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993).  Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.  Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

Porter and his attorney, Mr. Harrison, were able to negotiate a plea agreement with the Government whereby Porter agreed to plead guilty to one count of conspiracy to possess with intent to distribute, and to distribute, controlled substances.  A "Waiver of Collateral Attack" provision was included as part of the plea agreement.  That provision stated, "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion."  Plea Agreement, United States v. Porter, 2:15-cr-8 (S.D. Ga. Aug. 25, 2015), ECF No. 552, p. 9.  This waiver was repeated at the beginning of the plea agreement summarizing Porter's promises.  Id. at p. 3.

Porter appeared before Judge Wood for his change of plea, or Rule 11, proceeding. Judge Wood addressed Porter and informed him the purpose of the hearing was to ensure that he understood the case that was pending against him, that he understood all of the rights he was waiving or giving up by pleading guilty, and that there was a factual basis for the guilty plea. Change of Plea Hr'g Tr., United States v. Porter, 2:15-cr-8 (S.D. Ga. Aug. 25, 2015), pp. 2–3. Judge Wood inquired whether anyone had forced or "lean[ed] on" Porter to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do.  Id. at p. 4.  Judge Wood told Porter that he did not have to plead guilty, and if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence during that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id. at pp. 6–7.  However, Judge Wood cautioned Porter he would be waiving these rights if he pled guilty.  Id. at p. 7.  Porter stated he understood and did not have any questions.  Id. at pp. 7–8.

Porter also stated he and Mr. Harrison reviewed the Indictment together, discussed the facts and law of his case, and discussed the proposed plea agreement.  Id. at p. 8.  Porter stated Mr. Harrison had generally spoken to him about the advisory Sentencing Guidelines, that he was satisfied with Mr. Harrison's representation and had no complaints about him whatsoever.  Id. at p. 8.  Judge Wood reviewed the sole count Porter was charged with in the multi-count, multi-defendant Indictment and the essential elements of the crime for which he was charged and that the Government would have to prove.  Id. at pp. 9–10.  Judge Wood advised Porter of the maximum sentence she could impose, which was twenty years' imprisonment, a fine of not more than a million dollars, and at least three years' supervised release.  Id. at p. 10.  Judge Wood also confirmed Porter's understanding of the advisory Sentencing Guidelines and the major factors that go into whether Porter will be sentenced within, below, or above the advisory guideline range.  Id. at pp. 11–12.

Additionally, Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Greg Gilluly stated:

> The Government will not object to a recommendation from the US Probation Office that the Defendant receive a three-level reduction for acceptance of responsibility . . . . [Defendant] also waives his right to appeal, which is outlined in the plea . . . and agrees to waive his right to collaterally attack his conviction as will be explained by The Court and as outlined in the plea . . . .

Id. at pp. 13–14.  Judge Wood asked Porter if this summary was consistent with the plea agreement he signed, and he stated it was.  Id. at p. 14.  Porter also stated he read the plea agreement, and Mr. Harrison answered any questions he may have had before he signed the agreement.  Judge Wood then addressed Porter:

> I do want to point out the details of what Mr. Gilluly referenced, and that is, as a part of the plea agreement, you have agreed to waive certain appellate rights.  It states, "Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground."

5

Now there are three exceptions to that waiver of your direct appeal rights. That is, if and only if one of these three things were to occur would you get a direct appeal right. That is Number 1, if I were to sentence you above the statutory maximum, then you would get a direct appeal right of that. Number 2, if I were to sentence you above the advisory guideline range as found by me, then you could appeal that directly, or Number 3, if the Government were to file a direct appeal, then you, too, could file a direct appeal. But otherwise by virtue of this plea agreement, you waive all other direct appellate rights . . . .

The agreement also contains a waiver of your collateral attack rights. It states[,] "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method including but not limited to a 28 USC Section 2255 motion."

And the only exception to that waiver of collateral attack rights is that you do retain the right to collaterally attack based on a claim of ineffective assistance of counsel. Do you understand that waiver?

Id. at pp. 15–16. Porter stated he understood these provisions and did not have questions.

Judge Wood then asked Porter whether he still wished to plead guilty to the sole count he was charged with in the Indictment because he was in fact guilty of that count, and Porter answered in the affirmative. Id. at pp. 16–17. Judge Wood also asked Porter whether he understood the rights and privileges he was waiving if Judge Wood accepted his plea, and Porter said he did. Judge Wood determined Porter participated in the Rule 11 proceedings "knowingly" and "intelligently." Id. at p. 17. Further, Judge Wood determined Porter's plea was "knowing" and "voluntary." Id. Porter affirmed these findings. Id. The Government provided a factual basis for Porter's plea of guilty. Id. at pp. 18–20. After hearing from Porter again, during which time he agreed with the Government's factual basis, Judge Wood accepted Porter's plea and adjudged him guilty of the sole count he was charged with in the Indictment. Id. at pp. 20–21.

At the sentencing hearing, Judge Wood asked Porter whether he had the opportunity to read and review the Pre-Sentence Investigation report ("PSI") and discuss it with Mr. Harrison. Porter stated he had, and Mr. Harrison asserted that there were no objections to the factual

accuracy of the PSI or to the probation officer's application of the advisory Guidelines.  Sent. Hr'g Tr., United States v. Porter, 2:15-cr-8 (S.D. Ga. Aug. 16, 2016), ECF No. 793, p. 3. Accordingly, Judge Wood adopted the factual statements in the PSI and the probation officer's application of the Guidelines.

Judge Wood determined that Porter's offense level was 25 with a criminal history category of IV, calling for "84 to 105 months of imprisonment." Id. at p. 3.  After hearing from Mr. Harrison, the AUSA, and Porter himself, and reviewing the PSI, Porter's criminal history, and the sentencing factors of 18 U.S.C. § 3553, Judge Wood sentenced Porter to 90 months' imprisonment. Id. at p. 10.  Judge Wood remarked that she saw "no reason to depart or vary from the guidelines." Id.    Additionally, Judge Wood reminded Porter of the waiver provisions contained in his plea agreement.  Specifically, Judge Wood stated, "[P]ursuant to that plea agreement, you waived certain appellate rights with limited exceptions[.]" Id. at pp. 11–12.

The record clearly indicates that Porter understood the implications of entering a guilty plea, as well as the meaning of the appeal and collateral waiver conditions.  In addition, Judge Wood specifically questioned Porter about these conditions during the Rule 11 hearing and reminded him of these provisions during sentencing.  See United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997) (holding that an appeal waiver is enforceable if either: "(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of that waiver.")  Furthermore, Porter and Mr. Harrison also executed the Post-Conviction Consultation Certification.  Notice, United States v. Porter, 2:15-cr-8 (S.D. Ga. Feb. 1, 2016), ECF No. 677.  In this Certification, Porter checked the box indicating he decided not to file an appeal, including a Section 2255 motion, and that Mr. Harrison had explained the consequences of failing to do so.

Porter and Mr. Harrison then signed the Certification.   Id.   As noted above, Porter "entirely waive[d] his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion."  Plea Agreement, United States v. Porter, 2:15-cr-8 (S.D. Ga. Aug. 25, 2015), ECF No. 552, p. 9.  The only exception is a claim based on ineffective assistance of counsel.  However, Porter's Section 2255 Motion is based on his contention that he should get a minor role deduction because he only played a minor role in the conspiracy and "meets the (v) factors pursuant to [Amendment 794] to [U.S.S.G.] Section 3B1.2."  (Doc. 1, p. 4.)

Accordingly, the collateral attack waiver provision in Porter's plea agreement bars the primary claim of his Section 2255 Motion.  Nevertheless, even if the collateral attack waiver provision somehow did not bar Porter's Motion, his claim would still fail.  Amendment 794 to Section 3B1.2 affords Porter no relief.  Amendment 794 only clarified the factors a court should consider for a minor-role adjustment and did not substantively change Section 3B1.2.  See United States v. Cruickshank, 837 F.3d 1182, 1194 (11th Cir. 2016); see also U.S.S.G. Supp. App. C., Amend. 794 ("This amendment provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies.").  Furthermore, the case Porter cites to as support for Amendment 794's retroactive applicability, United States v. Quintero-Leyva arose out of the Ninth Circuit Court of Appeals, which is non-binding case law for this Court. 823 F.3d 519 (9th Cir. 2016).[4]

Accordingly, Porter is not entitled to his requested relief, and the Court should **DISMISS** all portions of Porter's Motion other than his claim of ineffective assistance of counsel.

---

[4]  Even if the Court were to find the Ninth Circuit's opinion in Quintero-Leyva persuasive, it would not benefit Porter's Motion.  Quintero-Leyva only found Amendment 794 retroactively applicable to direct appeals and not in the post-conviction context.  Quintero-Leyva, 823 F.3d at 522–23.

## II.     Porter's Ineffective Assistance of Counsel Claim

To the extent Porter does make an ineffective assistance of counsel claim, his Motion would still fail.  Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel performed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter,

562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, we need not review the other prong."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.

Porter argues that Mr. Harrison provided ineffective assistance of counsel by failing to "raise the issue of a minor participate [sic] role during sentenc[ing], and request for a downward departure on my behalf[.]"  (Doc. 1, p. 9.)  As an initial matter, Porter's role in the offense would not have been a proper ground for requesting a downward departure (i.e. a sentence below his Guideline range).   U.S.S.G. § 5H1.7 ("A defendant's role in the offense is relevant in determining the applicable guideline range (see Chapter Three, Part B (Role in the Offense)) but is not a basis for departing from that range (see subsection (d) of §5K2.0 (Grounds for Departures)).").  Moreover, during the sentencing hearing, Mr. Harrison did, in fact, specifically raise the issue of Porter's role in the offense.  He told the Court:

> I think the evidence will show . . . that [Porter] was a low to mid-level distributor in the part of this conspiracy . . . .  I would ask The Court to consider the circumstances I've argued and to give him a sentence at the low end of the guideline and we would request a sentence for 84 months[.]

Sent. Hr'g Tr., United States v. Porter, 2:15-cr-8 (S.D. Ga. Aug. 16, 2016), ECF No. 793, p. 6–7.  Thus, the record clearly shows that Mr. Harrison did address Porter's role in the conspiracy during the sentencing hearing and requested the Court decrease Porter's sentence based on that role.

Furthermore, to the extent Porter contends Mr. Harrison should have requested a reduction in Porter's offense level under Section 3B1.2 for his role as a minor participant in the conspiracy, Mr. Harrison's decision not to make such an argument was objectively reasonable based on the facts of this case. Nothing in the record supports Porter's claim that he was "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. 3(A) (U.S. Sentencing Comm'n 2015). During Porter's Rule 11 Hearing, Detective Michael Scott Sapp testified that Porter was directly involved in a conspiracy to distribute drugs in Brunswick, Georgia. Change of Plea Hr'g Tr., United States v. Porter, 2:15-cr-8 (S.D. Ga. Aug. 25, 2015), pp. 18–20. Specifically, Detective Sapp's investigation revealed that Porter: discussed the purchase and sale of powder and crack cocaine with other members of the conspiracy; bought and sold powder and crack cocaine for the drug-trafficking organization; cooked cocaine into crack; and had Christopher Young and Arron Clark acting as his suppliers. Id. Porter agreed with this testimony. Id. at p. 20. Porter also agreed with the factual findings listed in the PSI— which repeated, in greater detail, the facts testified to by Detective Sapp. Sent. Hr'g Tr., United States v. Porter, 2:15-cr-8 (S.D. Ga. Aug. 16, 2016), ECF No. 793, p. 3; (PSI ¶¶ 1–29.) Moreover, Porter submitted a written statement to the Probation Officer admitting that he distributed drugs during the conspiracy for approximately six months and that he was personally accountable for at least 112 grams but less than 196 grams of cocaine base. (PSI ¶ 33.) Porter's admitted direct participation in the conspiracy and actions of selling drugs for months is not the type of limited involvement contemplated by Section 3B1.2. See U.S.S.G. § 3B1.2, Note 3(A) ("A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who

11

is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline."). In light of evidence to the contrary, including Porter's own statements, it was objectively reasonable for Mr. Harrison to not argue that Porter was a minimal or minor participant under Section 3B1.2. This is particularly true given the need for Mr. Harrison to not risk the three-level decrease in offense level Porter received for his acceptance of responsibility. See U.S.S.G. § 3A1.1, Note 1(A) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility . . . .").

Even if Mr. Harrison somehow made "errors so serious" that he "failed to function" and provide "reasonable professional assistance," Porter cannot show that he was prejudiced by this performance. As stated earlier, Porter must show that there was a substantial likelihood of a different result—i.e. that his sentence would be reduced. During the sentencing hearing, AUSA Carlton Bourne specifically disagreed with Mr. Harrison's assertion that Porter was only a low- to mid-level distributor. AUSA Bourne stated, "[Porter] is a mid-level distributor in this organization. He was not a leader. He was not the lowest of the low either." Id. at p. 7. AUSA Bourne also compared Porter's involvement to that of co-defendant Akeem Elijahwoun Kirksey: "[T]his is not Mr. Kirksey. I was getting ready to say Mr. Kirksey because Mr. Porter and Mr. Kirksey are pretty evenly situated in this conspiracy . . . . He is similarly situated to Mr. Kirksey." Id. Kirksey's Pre-Sentence Investigation Report reveals that he was also given a base offense level of 26 and did not receive an adjustment for his role in the offense. PSI, United States v. Kirksey, 2:15-cr-8 (S.D. Ga. Nov. 5, 2015), ¶¶ 32–41. However, Kirksey's advisory

guideline range was significantly lower than Porter's because Kirksey did not receive a two-level increase for possession of firearms and also had less criminal history points, putting him in a lower criminal history category than Porter.  Id.  The sentencing hearing transcript reveals that Judge Wood considered Porter's role in the conspiracy, but ultimately found that "the nature of [Porter's] conduct and the criminal history portion that does count makes the guideline range just exactly what it ought to be."  Id. at p. 10.  Thus, even if Mr. Harrison had argued for an adjustment in offense level or further emphasized Porter's role in the conspiracy, there is not a substantial likelihood that Porter's sentence would have been any different.

For all of these reasons, Porter failed to show that Mr. Harrison rendered ineffective assistance of counsel during the sentencing phase of his criminal proceedings and failed to show that he was prejudiced by any such deficient performance.  Accordingly, the Court should **DENY** the portion of Porter's Motion asserting claims of ineffective assistance of counsel.

### III.   Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Porter leave to appeal *in forma pauperis*.  Though Porter has, of course, not yet filed a notice of appeal, it would be appropriate to address this issue in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).  Based on the above analysis of Porter's Motion and the Government's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Porter *in forma pauperis* status on appeal.

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Further, under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when entering an order adverse to the applicant.  A certificate of appealability may be issued only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th

Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  <u>Miller-El</u>, 537 U.S. at 336.

Applying the Certificate of Appealability standards set forth above, Porter has not demonstrated any discernable issues worthy of a certificate of appeal.  Accordingly, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Porter a Certificate of Appealability, Porter is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS in part and DENY in part** Porter's Motion to Vacate, Set Aside, or Correct his Sentence, filed pursuant to 28 U.S.C. § 2255, and **DIRECT** the Clerk of Court to **CLOSE** this case.  I also **RECOMMEND** that the Court **DENY** Porter *in forma pauperis* status on appeal and **DENY** Porter a Certificate of Appealability.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Porter and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of October, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA